Robert H. Lanyon, Appellee, v. Lanquist & Illsley Company et al., on appeal of Lanquist & Illsley Company.

## Gen. No. 15,098.

1. NEGLIGENCE—*when high degree of care required.* Where contractors or other persons hoist or suspend an iron beam weighing five or six hundred pounds, a hundred feet in the air, and swing it over a public thoroughfare in the business center of a large city, ordinary care and diligence require the exercise of almost every precaution and safeguard that human foresight can conceive to protect the traveling public in the street below from all dangers from the falling of such beam and from all occurrences which might cause such beam to fall into the street. It is not the exercise of such care to depend upon custom that where several contractors are engaged in the construction of a building, each controlling or operating boom derricks, each contractor, before moving or causing to be moved the boom of his derrick, shall ascertain definitely whether or not any of the other contractors were so operating their derricks as to interfere with the proposed movement.

2. VERDICTS—*when not disturbed as excessive.* Reviewing courts will not substitute their judgment for that of juries on questions of damages unless it appears upon a consideration of all the evidence that the amount assessed by the jury is the result of passion or prejudice, and not of calm and dispassionate reflection, or is so grossly excessive that it is not consistent with reason, and shocks one's sense of justice.

3. INSTRUCTIONS—*when refusal of correct will not reverse.* The refusal of a correct instruction will not reverse if its substance is substantially contained in other instructions given.

4. APPEALS AND ERRORS—*of what complaint cannot be made.* A party cannot complain except of those errors which are prejudicial to his own interests.

Lanyon v. Lanquist & Illsley Co., 157 Ill. App. 316.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. WILLARD M. McEWEN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Affirmed. Opinion filed July 15, 1910. Rehearing denied November 11, 1910. Certiorari denied by Supreme Court (making opinion final).

**Statement by the Court.** This appeal is from a judgment of $35,000 recovered by appellee, Robert H. Lanyon, against appellant, Lanquist & Illsley Company, and its co-defendant, James H. Stevens, in the Superior Court in an action for personal injuries sustained by appellee.

Appellant was the contractor for the erection of steel work on the Commercial National Bank Building, being erected on the northeast corner of Clark and Adams streets, Chicago. Its co-defendant, Stevens, was the contractor for the granite work on the same building. The steel work and the granite work were progressing at the same time. The plaintiff sustained injuries by the falling of a channel iron from the eighth floor of the building on September 10, 1906.

The amended declaration contained two counts. The first count avers that the defendants were engaged in the erection of the building and that in its work of erecting the structural iron work appellant was using and operating a hoisting apparatus and equipments for hoisting and moving materials and setting the same in place; and that the defendant Stevens was using a hoisting apparatus for moving and hoisting materials and setting the same in place; that while the plaintiff was walking along Adams street upon or near the sidewalk adjoining the building and in the exercise of due and ordinary care and diligence on his part, the defendants carelessly and negligently caused a steel or iron beam to fall from the building to and upon the ground in Adams street, crushing a wooden fence or enclosure whereby the plaintiff was injured.

The negligence averred in the second count is that the appellant caused an iron bar to extend beyond the outer line of the building and defendant Stevens negligently operated its hoisting apparatus so as to come in contact with the iron bar, causing it to fall and thereby the plaintiff was injured.

The evidence of the plaintiff tended to show that the de-

fendants were employed on the Commercial National Bank building, at Clark and Adams streets, as charged in the declaration, Lanquist & Illsley being engaged in the erection of the steel work and James H. Stevens being engaged in the setting of the granite; that on the day of the injury to the plaintiff the steel work had been constructed to a height of about twelve stories, and the granite work was being set near the ground floor. The south side of the building abutted on Adams street and some ten or twelve feet from the south wall of the building was a fence running parallel with the wall of the building, along the south side of which was a temporary wooden sidewalk for pedestrians passing along Adams street.

Each defendant in handling material used boom derricks operated by steam power, and the booms of which were from thirty-five to eighty feet in length. The derricks were of the same general construction, each having a mast, held upright by stiff braces, the mast turning freely in any direction by means of pivot pins at its top and bottom. To the bottom of the mast was attached by a hinge-like casting a boom, considerably longer than the mast, operated by means of wire cables controlled from a steam engine. The outer end of the boom could be raised or lowered, swinging up and down on the hinge, and the boom could also be swung from side to side, turning the mast with it. In addition to the cable which raised or lowered the boom, there was attached to its outer end a pulley, through which ran a second cable, used for raising or lowering materials handled by the derrick. On the south or Adams street wall of the building the derrick of the defendant Stevens was located about thirty or forty feet east from the west corner of the building, and the base of the derrick rested upon the fifth floor, the boom swinging out from the building in a half circle. The derrick of the Lanquist & Illsley Company nearest the southwest corner of the building was placed on the twelfth floor, and the boom of this derrick was eighty feet long and swung in practically three-quarters of a circle around the corner and over above the south and west walls of the building.

Lanquist & Illsley Company had been placing on the south wall of the building certain channel or angle irons, which were fastened at regular intervals on the outside of the floor girders and outside the outer walls, for the purpose of holding in position the terra cotta and brick constituting the walls; and a large number of these irons were distributed from a pile on the eighth floor of the building which was within ten or twelve feet of the southwest corner. During the day of the accident, for several hours preceding it, Lanquist & Illsley Company had been placing and setting these channel irons. The witnesses testified that the manner of doing the work was that each channel iron before being moved from the eighth floor was pushed out about two and one half to three feet over the edge of the outer wall of the building, that a hook from the boom of the derrick above was then attached to it by a rope slung around the channel iron, and it was swung out and then moved into place.

Appellant's evidence tended to show that the derrick of the stonecutter Stevens had not been working at the place where these channels were being moved, for some hours before the accident. This evidence is, however, controverted by the evidence offered on behalf of the defendant Stevens to the effect that for at least an hour before the accident the defendant Stevens had been transferring stone from the east side of his derrick to the west side; that about fifteen or twenty stones had thus been moved along the south side of the building before the accident happened, and that the boom of the Stevens derrick had been moved around from the east to the west about twenty minutes before the accident happened, and that the stone that was being transferred at the time or just before the accident weighed from 800 to 1,000 pounds. The employes of appellant had projected one of the channel irons over the edge of the wall and were waiting for the pulley or fall from the derrick to come down from above, when suddenly the boom of the derrick operated by the defendant Stevens swung around from the east and lowered from above, struck the channel iron so extended or projected by the appellant on the top; and in spite of the efforts

of appellant's men, who were handling the channel iron, to prevent it from becoming dislodged, it was dragged from its position by the boom of the Stevens derrick, and fell into the street below, causing appellee's injuries.

It was claimed on the trial by the defendant Stevens that the boom of the Stevens derrick was not at any time moved close enough to the building to interfere with the channel iron, but the defendant Stevens offered no evidence tending to show how the channel iron fell, if it was not in the manner testified to by the witnesses for plaintiff and appellant.

WINSTON, PAYNE, STRAWN, & SHAW, for appellant; JOHN BARTON PAYNE, JOHN D. BLACK, ELBRIDGE HANECY and JOHN C. SLADE, of counsel.

JOHN S. HUEY, for appellee; MANN & MILLER, of counsel.

MR. JUSTICE SMITH delivered the opinion of the court.

As indicated in the preceding statement, there appear in the evidence in the record only two points of controversy as to facts. By the plaintiff's evidence it is shown that, to the knowledge of the witnesses, the Stevens derrick had not been operating on the afternoon of September 10, 1906, until about five minutes before the injury to the plaintiff, and then only in the field to the east of that in which appellant was handling and placing channel irons. But, upon a consideration of all the evidence, and particularly the evidence given by the witnesses called by the defendant Stevens, we are of the opinion that it shows by a clear preponderance that for an hour before the time of plaintiff's injury, the derricks of both defendants were in operation, and that the derrick of defendant Stevens had been engaged during that time in transferring granite from a point east of the derrick to points west of the derrick, making it necessary to swing the boom of the Stevens derrick to the west and into the same field of operations in which appellant's derrick was operating, and where it might come in contact with the material being handled by appellant.

Although these derricks had been operated for at least an hour in this manner, over a public thoroughfare, and with the possibility of interfering with each other at any moment, the record shows no attempt on the part of either defendant by signals or otherwise to exercise due care and diligence under the existing conditions and circumstances. No notice or communication passed from one defendant to the other during the afternoon which was designed to safeguard and protect in any way those persons rightfully using Adams street. In our opinion, where contractors or other persons hoist or suspend an iron beam weighing five hundred or six hundred pounds, a hundred feet in the air, and swing it over a public thoroughfare in the business center of a large city, ordinary care and diligence require the exercise of almost every precaution and safeguard that human foresight can conceive to protect the traveling public in the street below from all dangers from the falling of such beam and from all occurrences which might cause such beam to fall into the street. It is not the exercise of such care to depend upon custom that where several contractors are engaged in the construction of a building, each controlling or operating boom derricks, each contractor, before moving or causing to be moved the boom of his derrick, shall ascertain definitely whether or not any of the other contractors were so operating their derricks as to interfere with the proposed movement. Or, in other words, as counsel for appellant say in their brief: "that the contractor first using a derrick obtained the right of way, and other contractors were in the custom and habit of ascertaining whether the space for the operation of their derricks was clear, and of respecting the superior right of the first contractor, before beginning their own operation;" for, if the contractor not having the right of way should fail to observe the custom, it would still be the duty of the contractor having the right of way by the custom to govern his actions by the exigencies and according to the contractor's actions notwithstanding the custom. It appears from the evidence, which is practically uncontradicted, that both defendants were operating their derricks

at the same time, and had been so operating them for an hour, so that under the supposed custom neither contractor had the right of way and could not and did not rely upon the alleged custom, if it existed.  Furthermore, if such custom existed, it appears from the evidence that neither of the defendants was observing it, and the jury had a right to conclude from the evidence that both defendants were pursuing their work regardless of each other, or of such a custom.  Hence, had the alleged custom offered to be shown been received in evidence, it could not have affected the conclusion of the jury, or have exonerated the appellant from the charge of negligence in proceeding with its work while Stevens was operating its boom°where it might interfere with appellant's operations.  Appellant's foreman, Omundson, knew that the Stevens boom could reach the channel iron which he was engaged in hoisting.  He also knew five minutes before the Stevens boom struck the iron that the Stevens derrick was in operation "over to the east," and yet he proceeded with his work.  The exercise of due care, under the circumstances shown, required him, we think, to ascertain and know that the boom would not be swung to the west where it could or would interfere with appellant's operations, before proceeding with his work of moving out the iron to a place where it might be struck by the boom.  We do not hold that it was a negligent act to extend the channel iron outside of the building, for that was but a part of the reasonable and usual operation of putting it in place.  But is was negligence, we think, under the circumstances shown, to so place the iron without first ascertaining and knowing whether the Stevens boom was to be swung around in its operation where it might come in contact with the iron.

Holding as we do that the clear preponderance of the evidence tends to show that the custom offered to be shown by appellant was not being observed at the time of plaintiff's injury by the defendants  or either of them, and that reliance on such a custom by appellant while it was being violated by the defendant Stevens would not have justified appellant in proceeding with its operations over a public

thoroughfare where people were constantly passing, under the circumstances shown in the evidence, without exercising the care required by law, it follows, we think, that the exclusion of the evidence offered of the custom was not material error. While such a custom, if observed and followed by the defendants, would have been admissible in evidence on the question of negligence, as tending to shed light on the acts and conduct of the defendants, we do not see that the exclusion of evidence of the custom itself can be complained of by appellant when, as the evidence shows, it was not observing the custom in the operation of its derrick.

It is urged on behalf of appellant that the verdict is grossly excessive and is not based on the evidence.

It must be considered in the first place that the amount of damages in a case of this kind is to be determined by the jury under proper instructions, and it is to be left largely to their sound judgment. There cannot be in the nature of things any hard and fast rule by which to measure the amount of damages to be awarded. Reviewing courts will not substitute their judgment for the judgment of juries on such questions, unless it appears upon a consideration of all the evidence that the amount assessed by the jury is the result of passion or prejudice, and not of calm and dispassionate reflection, or is so grossly excessive that it is not consistent with reason, and shocks one's sense of justice. We find nothing in the record affording any basis for the conclusion that the amount of the verdict was the result of prejudice and passion in the minds of the jury. It is true that the amount of the verdict is large, but when the nature of the injuries suffered by the plaintiff is considered, and the operations upon his skull rendered necessary to relieve the brain compression made evident by the slow pulse and paralysis of his left side, the general impairment of the brain, leaving a permanent condition of weak, slow and hesitating mentality, with a tricky memory, and the general shock to his system and loss of health shown by the evidence, we cannot say that the amount of the verdict is excessive.

It is contended that the trial court erred in refusing the following instruction requested by appellant:

"You are instructed that if you believe from the evidence in this case that the beam in question fell by reason of the fact that the defendant, James H. Stevens, negligently operated a certain derrick on the south side of the Commercial National Bank building then in the course of construction, and that such negligent operation by the said Stevens of the said derrick was the sole negligent act which caused the injury to the plaintiff, then the plaintiff cannot recover against the Lanquist & Illsley Company and your verdict as to said company should be not guilty."

This instruction is fully covered by at least three other instructions given at the request of appellant. Its refusal was not error.

Complaint is made of the giving of the following instruction at the request of the defendant Stevens:

"In determining the question of liability in this case you must not be influenced or governed at all by any feeling of sympathy for the plaintiff or any feeling of prejudice against the defendant, James H. Stevens. It is your duty as jurors to determine the question of liability in this case as fairly and impartially for defendant, James H. Stevens, as for the plaintiff, and as fairly and impartially for the plaintiff as for defendant, James H. Stevens. Neither the plaintiff nor defendant, James H. Stevens, should receive any favor from you as jurors.

In considering your verdict you should be governed solely and exclusively by the evidence which the court permits the witnesses to give and the law given you by the court in these instructions, and base your verdict upon the evidence and the law regardless of all else."

While we do not approve of the instruction, we do not regard the giving of it as reversible error. Nor do we regard the giving of the instruction requested by the defendant Stevens to the effect that if the jury believed from the evidence that the iron setters were not in the exercise of ordinary care in handling the piece of structural iron, but were handling it in a negligent manner and that such negligence

was the efficient cause of the iron falling, and without such negligence of the iron setters the accident would not have happened, then they should find appellant guilty, as erroneous.

At the request of the defendant Stevens the court instructed the jury:

"The court further instructs you that as to the way and manner in which the servants of the defendants, Lanquist & Illsley Company, handled and placed the piece of structural iron at the time in question the defendant, James H. Stevens, owed plaintiff no duty. The only duty defendant, James H. Stevens, owed the plaintiff was to exercise ordinary care in hoisting and setting or moving stone. And if you believe from all the evidence that the defendant, Stevens, at the time and place in question, was in the exercise of ordinary care, in the prosecution of his work, then you should find him not guilty."

This instruction was clearly erroneous and misleading. The defendant Stevens owed to the plaintiff a duty with reference to the way in which the servants of appellant were handling and had placed the iron. If the movement of this derrick was likely to interfere with the iron as it was being handled by appellant and thereby cause the iron to fall and injure a passerby on the street below, Stevens was in law bound to use such care with reference to the movements of his derrick that no injury could be done to such passerby or to appellant or to the employes of the defendants. But while the instruction is wholly bad, its sole object and purpose, as expressed in the instruction, was to relieve Stevens from liability. The jury, however, found Stevens guilty. Of this we do not think appellant can complain.

We do not think the court erred in giving the first instruction on behalf of appellee on the question of joint negligence of the defendants.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*